DAVID GUADERRAMA

FILED
2023 JAN -3 PM 3:27
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **BRANDON CALLIER** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| **ROKFI LLC** a New York Limited Liability Company and **JAMES WEBSTER** | § | **EP23CV0007** |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant ROKFI LLC ("Rokfi") is a limited liability comapny organized and existing under the laws of New York with a principal address of 3500 Sunrise Highway, Great Rivers, NY 11739 and can be served via registered agent The LLC at 3500 Sunrise Highway, Great Rivers, NY 11739.

3. Defendant JAMES WEBSTER ("Webster") is natural person, resident of New York and the CEO of Rokfi and can be served at 37 Blackberry Lane, Center Moriches, NY 11934.

4. Defendants Rokfi and Webster are hereinafter referred to collectively as ("Defendants").

### JURISDICTION AND VENUE

5. **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' tele market in robocalls to Plaintiff; adds little complexity to the case.

6. **Personal Jurisdiction.** This Court has specific personal jurisdiction over the Defendants because they have repeatedly placed calls to Texas residents, derive revenue solicitating their goods and services to Texas residents, including the Plaintiff.

7. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. Residing in the Western District of Texas when he received a substantial if not every single call from Defendants that are the subject matter of this lawsuit.

8. This Court has venue over the Defendants because the calls at issue were sent by or on behalf of the above-named Defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

9. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13. Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

22. Plaintiff personally successfully registered his phone number ending in -4604 on the National Do Not Call Registry since December 2007.

23. Defendants routinely violate the TCPA as a part of their business model and knowingly and willfully commit TCPA violations.

24. Defendant Rokfi has been sued prior to this lawsuit for violating the TCPA *Oakes v. Rokfi, LLC,* No. 2:22-cv-04727-GRB-AYS (E.D.NY., Aug. 11, 2022) and continue their illegal behavior because violating the TCPA benefits Defendants financially.

25. Defendant Rokfi initiated unsolicited calls to Plaintiff's telephone number ending in -4604. Defendant Rokfi is a loan broker who offers merchant cash advances, small business loans, SBA loans, equipment financing and credit card processing nationwide to include the state of Texas.

26. Defendant Rokfi is owned and operated by Defendant Webster.

27. Plaintiff received at least nine (9) calls to his personal cell phone number ending in -4604 from Defendant Rokfi's representatives solicitating their goods and services without Plaintiff's prior express written consent and not related to an emergency purpose ("the calls").

28. The calls were made at the authorization from Defendant Webster.

29. Plaintiff and Defendants don't have a prior existing business relationship, Plaintiff has never been a customer or client of Defendants.

30. On August 4, 2021, Plaintiff received the first call to his personal phone number ending

in -4604 from an agent named "Josh," who asked about business revenues, Plaintiffs credit score and other qualifying questions for business funding.

31. Plaintiff then received an email from agent Josh later the same day containing a link for a funding application and Defendant Rokfi's information.

32. Phone calls on August 4, 2022, at 4:00 PM and June 21, 2022 at 12:53 PM were missed phone calls from Defendant Rokfi to Plaintiff's phone number ending in -4604.

33. Defendant Rokfi sent a series of unsolicited text messages from August 4, 20221, to November 16, 2022.

34. Table below displays the automated text messages made to Plaintiff by Defendants:

| **Number** | **Date** | **Time** | **Caller ID** | **Notes** |
|---|---|---|---|---|
| **1.** | 08/04/2021 | 10:06 AM | 888-408-0031 | Solicitation phone call |
| **2.** | 08/04/2021 | 3:22 PM | 631-302-7575 | Text message |
| **3.** | 08/04/2021 | 4:00 PM | 631-850-4749 | Solicitation phone call |
| **4.** | 08/11/2021 | 3:22 PM | 631-302-7575 | Text message |
| **5.** | 08/11/2021 | 3:42 PM | 631-302-7575 | Text message |
| **6.** | 06/21/2022 | 12:53 pm | 516-830-8196 | Missed phone call |

| | | | | |
|---|---|---|---|---|
| **7.** | 11/11/2022 | 11:29 pm | 631-302-7575 | Text message |
| **8.** | 11/15/2022 | 7:27 AM | 631-302-7575 | Text message |
| **9.** | 11/16/2022 | 8:25 AM | 631-302-7575 | Text messages |

35. Plaintiff searched the Texas Secretary of State website https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101.

36. Defendant does not qualify for an exemption under TX Bus. Com. Code 302.101.

37. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

38. No emergency necessitated the calls.

39. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

**PERSONAL LIABILITY OF DEFENDANT WEBSTER**

40. Defendant Webster is personally liable under the "participation theory" of liability because he had direct and personal participation in the conduct that violated the TCPA, or knowingly authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, No. 12- 22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

41. At all times material to the Complaint, acting alone or in concert with others, Defendant Webster has formulated, directed, controlled, had the authority to control, and participated in the acts and practices of Defendant Rokfi, to include the acts or practices set forth in this Complaint.

42. Webster knew, or should have known, that Plaintiff's telephone number was on the National Do-Not-Call Registry long before the phone calls were sent, and despite this fact, Webster made the decision to call Plaintiff's cell phone number without his prior express written consent.

43. Webster makes the day-to-day decisions for Rokfi.

44. Webster made the decision to target Texas telephone numbers for telemarketing purposes including calls to Plaintiff's number.

45. Webster is also personally liable because he was responsible for ensuring Rokfi's agents and/or employees do not solicit consumers with whom no prior business relationship existed and that are registered to the National Do-Not-Call Registry.

46. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

47. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General MotorsClore Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct....or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174

(5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

48. Quoting Texas v. American Blastfax:

> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

49. The Same Court held that corporate officers were also personally liable for DTPA violations

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct.....For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation......Accordingly, the

Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

50. Defendant Webster is the CEO, principal member, and an operator of Rokfi that controls the day-to-day operations of Rokfi and directs his employees, agents, salespersons, and solicitors to make TCPA-violating phone calls and to solicit business funding.

51. Defendant Webster approves the telemarketing scripts, signs the contracts, pays commissions for the illegal behavior, and directs illegal calls to be made for Rokfi's financial benefit.

52. Defendant Webster is not a mere bystander. He is the mastermind that schemed, planned, directed, initiated, and controlled illegal behavior.

53. Defendant Webster is well aware this conduct violates the TCPA and Tex. DPTA and refuses to alter the behavior. Mr. Webster is the CEO of Rokfi and the only person with the power to make the unlawful behavior stop. Yet, he has not taken any precautionary measures to stop the behavior because the behavior financially benefits him. Defendant Webster breaks the law with his eyes and pocketbooks wide open.

54. Defendant Webster and Defendant Rokfi should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via Tex. DTPA because they committed the conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

55. Defendant Webster should be held liable because to do otherwise would allow him to simply dissolve Defendant Rokfi and set up a new corporation and repeat their conduct. This would result in both the TCPA and DTPA being unenforceable.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

56. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

57. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

58. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

59. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

**Plaintiff's cell phone is a residential number**

60. The calls were to Plaintiff's cellular phone ending in -4606 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Violations of the Texas Business and Commerce Code § 302.101**

61. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

62. Texas Business and Commerce Code § 302.101 provides a private right of action. A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

63. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

64. Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

65. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

**FIRST CLAIM FOR RELIEF**

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))**

66. Mr. Callier realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67. Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

68. Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(c)(3)(F) by the Defendants by the telephone calls described above, in the amount of $500 per call.

69. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

**SECOND CLAIM FOR RELIEF**

**(Violations of The Texas Business and Commerce Code 302.101)**

70. Mr. Callier incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

71. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

72. Mr. Callier is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

73. Mr. Callier is entitled to all reasonable attorneys' fees, deposition costs, and discovery costs. **Texas Business and Commerce Code 302.302(d).**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff BRANDON CALLIER prays for judgment against the Defendants jointly and severally as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violates the TCPA and Texas state law;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation and individual for nine (9) calls.

E. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 jointly and severally against the corporation and individual for three (3) calls.

F. An award to Mr. Callier of damages, as allowed by law under the TCPA;

G. An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity

H. Such further relief as the Court deems necessary, just, and proper.

January 3, 2023,

Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com